**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ANDREW McCULLOUGH-EL | * |
| Plaintiff | * |
| v | *   Civil Action No. JFM-11-2277 |
| MARTIN O'MALLEY, et al. | * |
| Defendants | * |

\*\*\*

## MEMORANDUM OPINION

Pending are defendants' motions to dismiss or for summary judgment.[1] ECF No. 19 and 27. Plaintiff opposes the motions. ECF No. 31, 33 and 34. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

### Background

Plaintiff alleges in June of 2011 he suffered an infection in his left foot. On June 5, 2011, he was placed on "institutional medical count-out for nurse treatment (foot soaks)," and provided with an assigned tub, cleaning solution, cotton tipped swabs, gauze, ointment and bandages. ECF No. 1 at p. 4; ECF No. 5 at p. 6. He claims after soaking his foot for several days a scab started forming over the raw sore. Several days later, Nurse Destiny changed the soaking solution to one containing iodine solution. Although plaintiff told Destiny he did not ordinarily use an iodine solution on his foot, she did not provide him with the other cleaning solution.

Plaintiff states that after using the iodine solution, large pus-filled boils formed underneath the affected area on his left and right foot as well as both hands. He claims the boils burst and the affected area became raw and sore again. The iodine solution was continued for several more days by Destiny and plaintiff's foot and hands began getting worse with the

---

[1] Also pending is defendants' motion to seal Exhibit A filed with ECF No. 19. The motion (ECF No. 20) shall be granted.

formation of blistering bumps. Plaintiff alleges that Physician's Assistant Deirdre Mull realized from information found on the computer that plaintiff's foot should not have been soaked in iodine due to plaintiff's allergy. The iodine use was then discontinued. *Id*.

Meanwhile plaintiff attempted to have prison staff intervene on his behalf with regard to his medical care. Plaintiff states that he spoke with the Warden on June 22, 2011, about the fact that his foot was not healing and that the creams given to him for treatment only served to worsen the condition of his foot. Plaintiff claims the Warden expressed dissatisfaction with the medical contractor and promised to mention plaintiff's name at a meeting scheduled that day. ECF No. 5 at p. 6.

On June 23, 2011, plaintiff brought to the Warden's attention an erroneous response given to a complaint he filed about his foot. Plaintiff states the response indicated he underwent a biopsy of his foot on June 4, 2011, when in fact he had not. *Id*.

In July the condition of plaintiff's foot continued to worsen. He claims on July 6, 2011, he asked Nurse Heather how he could obtain a medical boot for his foot since it was leaking very badly, soaking through bandages, socks, and tennis shoe soles. Plaintiff claims the nurse looked at his foot, and agreed it had gotten worse, and told him he should stop soaking it and stop using the ointment but to continue cleaning it. She never answered plaintiff's question regarding a medical boot, requiring plaintiff to resort to using toilet paper to wrap his foot after the bandages became soaked. At this time plaintiff also noticed his right foot was becoming infected again between the toes. ECF No. 5 at p. 7.

On July 1, 2011, plaintiff states P.A. Deirdre performed a biopsy on his left foot which caused it to bleed profusely. Plaintiff claims the procedure was extremely painful as the drug used to numb his foot did not work and the tools used initially did not work. He further asserts

that a nurse had to intervene during the procedure after seeing how many times plaintiff had been "stuck" and noticing the amount of blood coming from his foot. ECF No. 1 at p. 5.

On July 12, 2011, plaintiff was told by Heather that his foot soaks had been discontinued and that he had been diagnosed with a staph infection. Later that day plaintiff spoke with the Warden regarding the lack of medical treatment and the worsening condition of his foot. Plaintiff gave the Warden administrative remedy complaints (ARPs) concerning officers who allegedly deprived him of medical care and harassed and retaliated against him for filing ARPs, and the lack of medical care. The following day plaintiff was called to medical and examined by physician's assistant Swecker who noted the conditions of his hands, foot, and "jock" area. Plaintiff was prescribed Tolenaftate and scheduled for morning bandage changes. Plaintiff states that on July 14, 2011 he noticed that since the soaks were stopped the infection in his foot was draining less, but the area had hardened and cracked. He also states the area burned and caused a lot of pain. In addition plaintiff states his calf area was tight, sore and hard to move. ECF No. 5 at p. 7.

On July 22, 2011, plaintiff went to the medical unit even though he was not on the list for nurse treatment. He states Nurse Aaron cleaned and re-bandaged his foot and commented that he did not know why plaintiff's name was not on the list because he had put his name down for nurse treatment. Plaintiff claims he was told he should see a podiatrist because the infection of his foot was worsening and the treatment provided was "obviously not working." *Id*.

### Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme

Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the

defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), s*ee also Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown,* 240 F. 3d at 390; *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Medical defendants[2]

The medical defendants explain that plaintiff has diabetes mellitus and a history of granuloma annulare, a common foot disorder for people with diabetes. ECF No. 19 at Ex. A, pp. 132 – 137. When plaintiff first reported the issue to medical staff he stated the problem began "years ago." *Id*. at p. 137. He was seen by a nurse who provided plaintiff with gauze to protect his foot while wearing shoes and referred him to a doctor for a follow-up exam. *Id*. Plaintiff was seen on June 4, 2011, by Dr. Mark Davis, who ordered a "punch biopsy" for the infected area of his foot and prescribed medications including topical ointments. *Id*. at pp. 132 – 136. The following day plaintiff was added to the nurse visit schedule so his foot could be cleansed and wrapped with gauze containing Silvadene. *Id*. at p. 131. In addition, plaintiff was seen by a nurse for foot soaks and bandage changes. *Id*. at pp. 47 – 49; 59 – 61; and 107 (wound care monitor charts dated July 12, 2011 through September 2, 2011).

On July 1, 2011, a biopsy was performed. *Id*. at p. 118. On July 13, 2011, plaintiff complained that the foot-soaking regimen was making the condition of his foot worse. Records prepared in response to his complaint indicate that the wound culture reported staph aureus resistant to penicillin and Bactrim. *Id*. at p. 113. Plaintiff's left foot is described as having large macerated patches of skin. *Id*. An order was written to provide plaintiff with dressing changes as needed. *Id*.

On July 26, 2011, plaintiff was seen by a podiatrist who noted the plantar surface of his left foot was "most concerning" and was possibly a stage two ulcer. *Id*. at p. 103. Additionally, the podiatrist noted that failed out-patient therapies included hydrocortisone topical, tolnaftate, coal tar and triamcinolone which not only failed, but worsened the condition of plaintiff's foot. *Id*. The following day it is noted that plaintiff is "taking antibiotics to resolve cellulitis." *Id*. at

---

[2] "Medical defendants" include Stacey King, Kevin McDonald, Nurse Heather G., and Crystal Swecker.

p. 99. Plaintiff was later sent to Bon Secours hospital for a consultation on August 26, 2011, where he was treated for a staph infection with oral Lamisil (250 mg) which he was directed to take once daily for 30 days. *Id*. at pp. 67 – 68. Plaintiff was advised that if his foot did not improve he would need to be seen by a dermatologist. *Id*.

While the medical records support plaintiff's assertions that the condition of his foot worsened during the times noted in his complaint, subsequent to that time frame his foot began to heal. By September 16, 2011, medical staff noted that plaintiff's foot was "healing." *Id*. at pp. 47 – 49. On October 5, 2011, plaintiff's wound care was changed to a self-care program and he was given supplies to continue treating his foot which was described at that time as "peeling and flaky." *Id*. at p. 29. By November 2, 2011, it is noted that no wound can be seen on plaintiff's feet. *Id*., at p. 15.

There are no records indicating that plaintiff was given iodine to soak his foot. There are notations in the records provided by medical defendants that plaintiff reported a fish and peanut allergy to medical staff. In addition, it is noted that his initial intake was lost and the allergies he reported were not noted in his record. *Id*. at p. 50. In any event, there is no indication that medical defendants were deliberately indifferent to the worsening condition of plaintiff's foot. In fact, the undisputed record establishes that plaintiff's wound was monitored carefully, appropriate medications were provided, and referrals to specialists made. The condition of plaintiff's foot was a serious medical condition and was treated as such. The fact that the infection was not cured immediately was unfortunate, but is not evidence that medical defendants were deliberately indifferent to plaintiff's serious medical need.

Plaintiff seems to concede in his response in opposition that the infection in his left foot was in fact treated, but he claims the rash on his hands and wrists were not. ECF No. 31.   He

alleges that the medical records submitted by medical defendants could be forgeries and that some of the records do not indicate that he received treatment. *Id*. at pp. 6 – 8.  In order to survive a motion for summary judgment the non-moving party must bring to light evidence of a genuine dispute of material fact.  To satisfy that burden, plaintiff may not simply rely on unfounded allegations of fraud, nor can he change the focus of his claim to another malady that was mentioned in records but was not the focus of treatment.  To the extent that plaintiff's hands were not treated, he has neither established that the rash on his hands was a serious medical condition nor that he suffered an injury as a result of the alleged failure to treat. Moreover, "an inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle v. Gamble*, 429 U.S. at 105.

Additionally, plaintiff cannot manufacture a genuine dispute of material fact by simply attaching an audit report from 2007 indicating problems with the medical contractor services in the Maryland Division of Correction.  ECF No. 31 at pp. 28 – 43.  There is nothing to indicate that plaintiff has personally suffered as a result of a particular finding made in the report. The medical defendants are entitled to judgment in their favor.

<u>Correctional defendants</u>

Section 1983 liability on the part of the supervisory defendants requires a showing that: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F. 2d at 854 (internal citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984) (supervisory liability for an inmate's beating by prison guards).  "[L]iability ultimately is determined 'by pinpointing the

persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" *Shaw v. Stroud*, 13 F. 3d 791, 798 (4th Cir. 1994), quoting *Slakan*, 737 F. 2d at 376.

The basis for plaintiff's claim against correctional defendants Gregg Hershberger and J. Michael Stouffer is that he filed ARPs about his medical care and they failed to intervene on his behalf. ECF No. 1 and 5. He does not illuminate any further the basis for correctional defendants' liability in his response in opposition[3] to defendants' motion to dismiss or for summary judgment. ECF No. 31. Correctional defendants provide records, which are not disputed by plaintiff, indicating that his complaints about failure to treat the infection in his left foot were unwarranted. ECF No. 27 at Ex. 2, pp. 1 – 4. An investigation into his claim confirmed that plaintiff had been seen numerous times for treatment of his foot to include a biopsy of the infected area. *Id*. Given the status of his ongoing medical care, there was no reason for correctional defendants to believe or even suspect that plaintiff's serious medical condition was going untreated. *See Iko v. Shreve*, 535 F. 3d 225, 241 (4th Cir. 2008) (requiring knowledge that actions taken were insufficient to mitigate the risk of harm to the inmate arising from the medical need).

With respect to plaintiff's claim regarding being denied the opportunity to go to medical for a bandage change before going to court, correctional defendants deny plaintiff ever made a statement regarding that need. ECF No. 27 at Ex. 3 and 4. Plaintiff does not refute the allegation. In any event, if the claim is taken as true and plaintiff was required to travel out to

---

[3] Plaintiff appears to claim that all defendants were acting in concert to deprive him of medical care and shifts his focus from treatment of his foot to failure to treat his hands and wrists which were infected with a rash. *See* ECF No. 31.

court on July 8, 2011, wearing dirty bandages, he has failed to allege a resultant injury.[4] Inconvenience and failing to insure medical care which is desirable is not enough to state a constitutional claim. *See Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977) (right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable.*") (emphasis in original). Correctional defendants are entitled to summary judgment in their favor.

\_\_May 17, 2012_____       \_\_\_\_/s/_____
Date                             J. Frederick Motz
                                 United States District Judge

---

[4] To the extent plaintiff claims his assignment to quarantine because his cell mate had symptoms of the flu violated his constitutional rights, the claim fails. His complaint was investigated by correctional defendants and even though protocol for quarantine was not followed, his claim was dismissed for failure to establish an injury. ECF No. 27 at Ex. 5. Indeed, no cognizable injury is alleged in the complaint with respect to his assignment to quarantine. ECF No. pp. 7 – 9. In addition, because plaintiff does not address this claim in his response in opposition, the claim appears to have been abandoned.